UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

EZ PAWN CORP.,

         Plaintiff,

     - against -

CITY OF NEW YORK,

         Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CV-3852 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

Before the Court is Plaintiff EZ Pawn Corp.'s ("EZ Pawn" or "Plaintiff") Motion for Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988. For the reasons stated below, Plaintiff is awarded $160,899.38 in attorney's fees and $3,197.40 in costs, for a total of $164,096.78.

## BACKGROUND

The Court assumes the parties' familiarity with the facts in this case and thus recites them only to the extent they are relevant to the Court's analysis. Plaintiff EZ Pawn is a licensed pawnbroker and second-hand dealer that maintains fifteen locations in New York City. (Defs.' R. 56.1 Statement, Dkt. 44 ¶¶ 10–11; Pls.' Aff. & Decl. Opp'n Summ. J., Dkt. 47-1 ¶ 1.) On July 11, 2016, EZ Pawn and one of its employees, Aloamaka Onwuakor ("Onwuakor"),[1] filed this action against the City of New York ("Defendant" or the "City").[2] (*See generally* Compl., Dkt. 1.) In the Complaint, EZ Pawn and Onwuakor alleged that the City, through the actions of the New York City Police Department, violated EZ Pawn's constitutional rights by executing recurring,

---

[1] As explained below, the Court granted the City's motion for summary judgment on all of Onwuakor's claims. *See* Section I.B.3.a *infra*; (*see also* M&O on Summ. J., Dkt. 55 at 33.) For that reason, the current motion is only on behalf of Plaintiff EZ Pawn.

[2] Plaintiff's initial complaint also named additional Defendants, including the New York City Police Department ("NYPD") and NYPD Officer Jonathan Bulzomi ("Bulzomi"). (Compl., Dkt. 1 at 1.)

warrantless, randomly timed, unannounced, and harassing searches upon EZ Pawn's stores. (*See generally id*.) During one of these searches, the NYPD allegedly arrested Onwuakor, then one of EZ Pawn's assistant managers, "without any justification or probable cause." (*Id.* ¶ 46.) In the Complaint, EZ Pawn and Onwuakor brought the following claims: (1) Fourth Amendment violation of EZ Pawn's rights by the NYPD and the City; (2) Equal Protection violation of EZ Pawn's rights by the NYPD and the City; (3) *Monell* claim against the City predicated on the aforementioned violations; (4) assault, battery, illegal search and seizure, false arrest, malicious prosecution, excessive force, and unlawful imprisonment on behalf of Onwuakor against Bulzomi; and (5) a claim for attorney's fees. (*Id.* ¶¶ 56–131.) Onwuakor ultimately withdrew his claims for assault, battery, and false arrest. (*See* 10/27/2017 Min. Entry, Dkt. 30; M&O on Summ. J., Dkt. 55 at 14.) His claims for illegal search and seizure, malicious prosecution, excessive force, and unlawful imprisonment proceeded. (*See* M&O on Summ. J., Dkt. 55 at 14.)

In 2018, the City, the NYPD, and Bulzomi filed a motion for summary judgment. (Dkt. 43.) This Court granted the motion for summary judgment with respect to Onwuakor's malicious prosecution claims against Bulzomi and all claims against the NYPD. (M&O on Summ. J., Dkt. 55 at 33.) The Court also deemed abandoned Onwuakor's illegal search and seizure, excessive force, and unlawful imprisonment claims. (*Id.*) As a result, Onwuakor, Bulzomi, and the NYPD are no longer parties to this action. (*Id.*) The Court denied summary judgment as to EZ Pawn's *Monell* claim against the City based on EZ Pawn's as-applied challenges under the Fourth Amendment for allegedly unlawful searches of EZ Pawn's premises and seizures of its merchandise. (*Id.*)

The remaining parties—that is, EZ Pawn and the City—settled the remaining claim in 2023 after EZ Pawn accepted the City's Offer of Judgment pursuant to Federal Rule of Civil Procedure

68.  (*See generally* Offer of J., Dkt. 108.)  The case settled for $125,001 "exclusive of reasonable attorney's fees, expenses, and costs to [November 9, 2023]."  (*Id.* at 1.)

After the case settled, Plaintiff filed the instant motion for attorney's fees and costs.  (*See* Pl.'s Mot. for Fees & Costs, Dkt. 110.)  Defendant opposes Plaintiff's motion, asserting numerous grounds for reductions of both fees and costs.  (*See* Def.'s Corrected Mem. Opp'n Pl.'s Mot. for Fees ("Def.'s Br."), Dkt. 118.)  The motion is now ripe for decision.

## LEGAL STANDARD

Title 42, United States Code, Section 1988 permits courts to award "the prevailing party" in § 1983 cases reasonable attorney's fees and costs.  *See* 42 U.S.C. § 1988.  A party "that accepts a Rule 68 offer of judgement" is a "prevailing party" for the purposes of § 1988 so long as they have "obtaine[ed] at least some relief on the merits of [their] claim."  *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 221 (S.D.N.Y. 2011) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)).  A "presumptively reasonable fee" is calculated using the "lodestar" method—that is, "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  "District courts have broad discretion, using 'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness' of each component of a fee award."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 94 (E.D.N.Y. 2012) (quoting *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).  Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

In assessing fees, district courts "bear in mind all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis omitted). Ultimately, a "presumptively reasonable [attorney's] fee boils down to what a reasonable, paying client would be willing to pay given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal quotation marks omitted).

Moreover, a fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous records. *N.Y. State Ass'n for Retarded Child. Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983). If a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours in calculating a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "A district court is not, however, required to set forth item-by-item findings concerning what may be countless objections to individual billing items . . . and may either subtract uncompensable hours or use percentage reductions to eliminate excessive or duplicative hours." *Marshall v. Reisman*, No. 11-CV-5764, 2013 WL 1563335, at *4 (E.D.N.Y. Mar. 25, 2013) (internal citations and quotations omitted), *R&R adopted*, No. 11-CV-5764, 2013 WL 1561478 (E.D.N.Y. Apr. 12, 2013).

## DISCUSSION

Because EZ Pawn accepted an offer of judgment, it is a prevailing party for the purposes of 42 U.S.C. § 1988 and is eligible for an award of attorney's fees and costs. *See Barbour*, 788 F. Supp. 2d at 221. Plaintiff's counsel, Paul Solda, Esq., seeks $341,640 in fees and $5,338.60 in costs. (Pl.'s Mem. Supp. Mot. for Fees ("Pl.'s Br."), Dkt. 110-5 at 12.) The City opposes Plaintiff's motion on a number of grounds, including that Solda's hourly rates are unreasonable

and that Solda submitted excessive and non-compensable hourly billing and costs.  (Def.'s Br., Dkt. 118 at 1.)  Each argument is addressed in turn.

## I.      Attorney's Fees

### A.      Hourly Rate

Plaintiff seeks fees at rates ranging from $375 per hour in 2016 to $575 per hour in 2023 for the sole practitioner who brought and litigated this case, attorney Paul Solda.  (Solda Decl., Dkt. 110-1 ¶ 6.)  Plaintiff argues that these rates are reasonable given Solda's relevant experience, years in practice, and the prevailing hourly rates for civil rights attorneys in this District as well as in the Southern District of New York.  (*See* Pl.'s Br., Dkt. 110-5 at 9–12.)  In support of this argument, Solda submitted a declaration indicating that he graduated from law school in 1988 (Solda Decl., Dkt. 110-1 ¶ 2 n.1); he has represented collateral loan brokers (i.e., pawn shops) since 2005 (*id.* ¶ 2); he has worked on "several §[ ]1983 cases" in the early 2000s (*id*. ¶ 2 n.2); and he has developed a "niche within the pawnbroker trade by representing those businesses in Fourth Amendment § 1983 claims in connection with their challenges with law enforcement" (*id.* ¶ 3 & n.3 (citing four cases).).  In further support of its argument that Solda's hourly rates are reasonable, Plaintiff points to *Lilly v. City of New York* for the proposition that "a reasonable hourly rate for a civil rights attorney [in the New York area] can range from $250 to $650."  No. 16-CV-322, 2017 WL 3493249, at *4 (S.D.N.Y. Aug. 15, 2017), *overruled on other grounds*, 934 F.3d 222 (2d Cir. 2019); (*see also* Pl.'s Br., Dkt. 110-5 at 10.).

Defendant, on the other hand, argues that Solda's rates are unreasonable.  (*See generally* Def.'s Br., Dkt. 118 at 6–8.)  It argues that "courts in the [Eastern] District have awarded partners hourly rates in the middle of the $300–$450 range."  (*Id.* at 6–7 (citing two cases where courts awarded partners hourly rates of $350 in uncomplicated § 1983 cases).)  Moreover, Defendant

points out that in a similar recent case, *Gem Fin. Serv., Inc. v. City of New York*, which was tried by Solda in this District in 2022, the Honorable Rachel P. Kovner found that a reasonable hourly rate for Solda was $350 per hour.  No. 13-CV-1686, 2023 WL 5831129, at *5 (E.D.N.Y. Sept. 8, 2023).

This Court agrees with Judge Kovner's reasoning.  While Solda's work in this case has been serviceable, he has not established himself "as an authority in his specialty" who merits the highest rates available.  *Gem Fin. Serv., Inc.*, 2023 WL 5831129, at *4 (quoting *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010)).  For example, in awarding the plaintiff's attorney his requested hourly rate in *Luca*, the court noted that the attorney was a "tenacious" and "outstanding" advocate who had worked on 200 plaintiff-side civil rights cases in the Eastern and Southern Districts of New York over decades.  *See Luca*, 698 F. Supp. 2d at 301.  Though Solda has some experience litigating similar cases, he has not established that his work merits an hourly rate among the highest available in this District for comparable work (such as his most recent hourly rate of $575 per hour).  *See also Gem Fin. Serv. Inc*, 2023 WL 5831129, at *5 (considering similar factors in finding "[a] reasonable hourly rate for Mr. Solda is $350 per hour").  This Court finds that a reasonable hourly rate for Solda is $375 per hour.

**B.    Excessive, Vague, and Non-Compensable Billing**

Defendant argues that Plaintiff's counsel is not entitled to compensation for all of his recorded hours due to excessive, vague, and non-compensable billing.  (Def.'s Br., Dkt. 118 at 9–15.)  The Court addresses each of Defendant's arguments in turn.

1.    Excessive Billing

a.    Overall

Defendant argues that Plaintiff's counsel's overall hours billed should be reduced by 30% due to excessive billing.  (*See* Def.'s Br., Dkt. 118 at 12–13.)  "[T]he fee applicant bears the burden

6

of establishing entitlement to an award and documenting the appropriate hours expended." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting *Hensley*, 461 U.S. at 437). In evaluating whether the hours in a fee application are excessive, courts need not "evaluate and rule on every entry in [the] application." *Carey*, 711 F.2d at 1146. Instead, a court may utilize a "percentage cut[] as a practical means of trimming fat from a fee application" if necessary. *Id.* In determining whether the number of hours billed was reasonable, "[d]istrict courts have broad discretion" and may rely on both "their experience with the case" and "their experience with the practice of law." *Gunawan*, 897 F. Supp. 2d at 94 (quoting *Fox Indus., Inc.*, 2005 WL 2305002, at *2).

Plaintiff's fee application is for a total of 667.4 billable hours. (Pl.'s Br., Dkt. 110-5 at 12.) This action was first filed in 2016 and was litigated through the end of 2023, meaning the case unfolded over seven years. (*See generally* Dkt. No. 16-CV-3852 (E.D.N.Y.).) Though there was no motion to dismiss, the parties conducted discovery and Defendant filed a motion for summary judgment, which Plaintiff opposed. (*See id.*) The case ultimately settled just weeks before trial was set to begin. (*Compare* 10/23/23 Minute Entry (noting that trial was to begin on 12/4/23), *with* Pl.'s 11/22/23 Ltr., Dkt. 107 (advising the Court that the parties had settled).) In consideration of the long-running nature of the case and the fact that the parties conducted discovery, briefed a substantial motion for summary judgment, and began trial preparations, the Court finds that the total number of hours billed was reasonable.[3]

---

[3] Defendant argues that the overall number of hours that Solda billed to this case was unreasonable given that Solda was simultaneously litigating another, similar case against the same Defendant. (*See* Def.'s Br., Dkt. 118 at 13.) But given that Solda represented entirely different plaintiffs in the two cases, the Court does not find it unreasonable that he had to expend a considerable amount of time on this litigation.

b.      With Respect to Individual Tasks

Defendant also contests the hours billed to certain tasks as excessive.  (*See* Def.'s Br., Dkt. 118 at 13.)  In particular, Defendant contests the number of hours that Plaintiff's attorney billed for preparation of the Complaint (22.35 hours), discovery (43.95 hours), the opposition to Defendant's motion for summary judgment (113.45 hours), expert report and testimony (25.4 hours), and trial preparation (272.6 hours).  (*Id.*; *see also* Hours Spreadsheet, Dkt. 119-2.)  A review of the spreadsheet of hours billed reveals that Solda's billed hours were reasonable.  (*See generally* Hours Spreadsheet, Dkt. 119-2.)

For example, Solda indicates that, in preparing the Complaint in this action, he spent 11.75 hours speaking with the client and interviewing witnesses and 10.85 hours drafting the complaint, summons, and civil cover sheet.  (*Id.* at ECF[4] 1.)  The Complaint in this case is 20 pages long and highly specific to the facts of this particular case.  (*See* Compl., Dkt 1.)  As such, Solda likely had to draft much, if not all, of the Complaint from scratch after completing the witness interviews.  In light of this, the Court finds the number of hours spent on this task to be reasonable.  Similarly, the Court does not find the number of hours Solda expended on discovery, preparing Plaintiff's opposition to summary judgment, or working with experts excessive.

With respect to hours billed for trial preparation, the Court agrees with Defendant that, at first glance, 272.6 hours (as alleged by Defendants) seems a bit excessive given that no trial took place.  However, upon further inspection of the relevant billing records, the Court finds the number of hours billed in preparation for trial was reasonable.  After all, this case settled only weeks before

---

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

trial was set to begin.  Trial was initially scheduled to begin in mid-November 2022.[5]  (*See* Pl.'s

10/24/22 Ltr., Dkt. 89.)  Solda's billing records demonstrate that beginning in late September 2022,

he began preparing for trial.  (Hours Spreadsheet, Dkt. 119-2 at ECF 24.)  Given that trial was

initially expected to begin in November 2022, the Court does not find that Solda's September 2022

start on trial preparation was unreasonable.  This preparation included working on proposed jury

instructions, selecting and preparing evidentiary materials to present at trial, speaking with his

client, preparing for the pre-trial conference, reviewing the Federal Rules of Evidence, working on

his witness list, preparing exhibit books for trial, preparing for voir dire, and more.  (*Id.* at ECF

24–29.)  The Court finds that all of these tasks—and the time spent on them—was reasonable in

light of Solda's expectation that trial would be going forward, as well as the ongoing settlement

negotiations.[6]

## 2.    Vague and Inflationary Billing

Defendant also asks the Court to reduce the fee award on the basis of vague time entries.

(*See* Def.'s Br., Dkt. 118 at 13–15.)  In recording time entries, "[c]ounsel [are] not required to

'record in great detail how each minute of [their] time was expended,' but [they] must 'identify

the general subject matter of [their] time expenditures.'"  *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir.

2022) (quoting *Hensley*, 461 U.S. at 437 n.12.).  Here, Defendant argues that time entries for

---

[5] Plaintiff, with Defendant's consent, requested an initial adjournment of the trial due to various scheduling issues and a desire to engage in settlement discussions.  (*See* Pl.'s 10/24/22 Ltr., Dkt. 89.)  The Court granted the request and re-scheduled the trial for August 2023. (10/26/2022 Dkt. Order.)  Due to further scheduling conflicts, the Court changed the trial start date a final time, moving it to December 4, 2023.  (2/10/2023 Scheduling Order.)

[6] For a separate reason described below, Solda's time billed after November 9, 2023 is not compensable.  *See* Section I.B.3.b *infra*.  Accordingly, Solda will not be compensated for all of the trial-related time entries, some of which took place after November 9, 2023.  (*See* Solda Bills, Dkt. 110-2 at ECF 62–63.)

"phone calls" and "correspondence" where Solda does not identify the subject of the communication are overly vague. (Def.'s Br., Dkt. 118 at 14.) Defendant also argues that billing in 0.1 hour increments is an "inflationary billing tactic." (*Id.*) According to Defendant, Solda's time records contain 67 instances of 0.1 hour time entries. (*Id.*) Defendant argues that because of these vague and inflationary time entries, Plaintiff's fee award should be reduced by 15% overall. (*Id.* at 14–15.)

"[V]ague descriptions make it difficult to determine the reasonableness of the time spent on particular tasks and warrant a reduction in attorney's fees." *Caban v. Emp. Sec. Fund of the Elec. Prods. Indus. Pension Plan*, No. 10-CV-389, 2015 WL 7454601, at *7 (E.D.N.Y. Nov. 23, 2015). The Court finds that Solda's time entries that refer generally to "telephone conferences" or "correspondence" are too vague to allow the Court to understand the reasonableness of time spent on those tasks. The Court, however, does not find that billing in 0.1 hour increments, on its own, is an impermissible inflationary billing tactic. And though some of Solda's time entries are impermissibly vague, most are not. As such, the Court reduces Solda's overall hours by 10% for vagueness. *See also Gem Fin. Serv., Inc.*, 2023 WL 5831129, at *6 (reducing Solda's hours by 10% for vagueness).

### 3.   Non-Compensable Billing

Defendant argues that attorney's fees may not be awarded for time spent on claims that were ultimately unsuccessful, time billed after Plaintiff accepted the Rule 68 Offer of Judgment, or time billed for other miscellaneous tasks. (Def.'s Br., Dkt. 118 at 9–12.) The Court addresses each argument in turn.

### a.   Unsuccessful Claims

Defendant argues that Solda's billable hours should be reduced by 50% because the Plaintiff had "less than complete success," i.e., because not every claim survived summary

judgment and because the dollar amount of the settlement was substantially less than the profits lost by EZ Pawn as a result of the City's conduct (as calculated by EZ Pawn's expert). (Def.'s Br., Dkt. 118 at 10–11.)

"[T]he degree of success obtained by the plaintiff is the most important factor in determining the appropriate fee award under § 1988(b)." *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004). "Where the 'plaintiff has achieved only partial or limited success,' an award based on the total hours expended on the litigation may in some cases result in an excessive amount." *Raja*, 43 F.4th at 87–88 (quoting *Hensley*, 461 U.S. at 436). "When a plaintiff has achieved partial success but '[their] claims involve a common core of facts or are based on related legal theories and are therefore not severable, attorney's fees may be awarded for [work done on] unsuccessful claims as well as successful ones.'" *Id.* at 88 (quoting *Green*, 361 F.3d at 98) (second alteration in original). If a "plaintiff has achieved [only] partial or limited success," an award of the attorney's full lodestar may not be warranted. *Id.* at 87–88 (quoting *Hensley*, 461 U.S. at 435). At the same time, "'[t]here is no precise rule or formula' for adjusting the lodestar to account for limited success." *Green*, 361 F.3d at 99 (quoting *Hensley*, 461 U.S. at 436) (alteration in original). As such, courts "may attempt to identify specific hours that should be eliminated," or they "may simply reduce the award to account for the limited success." *Id.* (quoting *Hensley*, 461 U.S. at 436–37).

Here, there is no question that Plaintiff has achieved only limited success. As Defendant points out, only one of the original seven claims pled in the Complaint survived summary judgment. (*Compare* Compl., Dkt. 1 ¶¶ 56–127, *with* M&O on Summ. J, Dkt. 55 at 33.) Moreover, as Defendant notes, EZ Pawn, the sole remaining Plaintiff, only recovered about a quarter of its lost profits. (*See* Expert Report, Dkt. 119-1 at ECF 3 (stating that Plaintiff's "lost profits as a result

of Defendant's alleged wrongful acts" were $479,000); Offer of J., Dkt. 108 at 1 (indicating that the case settled for $125,001).)  This alone, however, does not preclude recovery of attorney's fees in this case.

To the contrary, the Court finds that because the unsuccessful claims were born from a common nucleus of operative fact (that is, the NYPD's alleged harassment of EZ Pawn, including the harassment and arrest of one of its managers), it is not unreasonable to award fees even for work on claims that ultimately did not prevail.  Additionally, though Plaintiff may not have been successful in recovering much of its monetary loss, the outcome of this suit is likely to "help protect the civil rights of others," *Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004), by putting the City on notice that its implementation of the relevant "statutory and regulatory regime" may have violated the Fourth Amendment (M&O on Summ. J., Dkt. 55 at 22).  And in civil rights cases such as this one, "[t]he non-monetary value of [Plaintiff's] victory . . . should not be underestimated." *Morris*, 343 F. Supp. 2d at 248.  Furthermore, as explained above, the overall number of hours that Solda billed in this long-running case was not inherently unreasonable.  *See* Section I.B.1.a.  Consequently, the Court's reduction on this ground is limited to 20%.

b.   Fees Accrued After Acceptance of the Rule 68 Offer

Defendant argues that Plaintiff is not entitled to attorney's fees for any legal work performed after the acceptance of the Rule 68 Offer because of the express language of that offer. (Def.'s Br., Dkt. 118 at 11.)  Specifically, the Rule 68 Offer of Judgment states that the offer was "exclusive of reasonable attorney's fees, expenses, and costs to the date of this offer."  (Offer of J., Dkt. 108 at 1.)  In *Lilly v. City of New York*, the Second Circuit explained that, "[l]ike a typical settlement agreement, an accepted Rule 68 offer of judgment is a contract, and it must be interpreted according to ordinary contract principles."  934 F.3d at 235.  And in the *Lilly* case, the

Rule 68 offer of judgement contained very similar language.  *Id.* at 226.[7]  There, the court held that the express language of the "accepted Rule 68 offer . . . (*i.e.*, the contract) unambiguously states that the recoverable attorney's fees, expenses and costs are limited to those incurred by the date of the offer." *Id.* at 235.  The same reasoning applies here. *See also Taveras v. City of New York*, No. 20-CV-1200, 2024 WL 756361, at *2 (S.D.N.Y. Feb. 23, 2024) (holding that where the offer of judgment included the exact same language as here "a district court may not award a party attorney's fees for work incurred after [the] cut-off date" (quoting *Lilly*, 924 F.3d at 237)).  Here, the cut-off date in the Offer of Judgment is November 9, 2023.  (Offer of J., Dkt. 108 at 1.) Consequently, this Court cannot award Plaintiff any fees for legal work or costs incurred after that date, and Solda's total billable number of hours is reduced by 54.45 hours, which is the number of hours Solda billed after November 9, 2023.  (*See* Solda Bills, Dkt. 110-2 at ECF 62–63.)

      c.     Fees on Fees

Separately, Defendant argues that Plaintiff is not entitled to attorney's fees for work on the fee application, so-called "fees on fees."  (Def.'s Br., Dkt. 118 at 11.)  To the contrary, the Second Circuit has made clear that "[o]rdinarily, a district court has authority and discretion to award attorney's fees for hours expended on a fee application made under the Fees Act." *Lilly*, 934 F.3d at 235.  However, in this instance, fees on fees are precluded by the express language of the Rule 68 Offer. *See* Section I.B.3.b *supra*.[8]

---

[7] In *Lilly*, the offer of judgment stated that the plaintiff was entitled to $10,001 "plus reasonable attorneys' fees, expenses, and costs to the date of this offer for plaintiff's federal claims."  934 F.3d at 226.  The only difference between the relevant language in the offer of judgment here and that in *Lilly* is the use of the word "plus" in *Lilly* in place of the phrase "exclusive of." *Compare id.*, *with* Offer of J., Dkt. 108 at 1.

[8] Defendant asserts, without any legal argument, that Plaintiff cannot be compensated for time spent on interactions with the press, time spent conferencing with an attorney who did not appear in this lawsuit, and time spent requesting to seal documents that Plaintiff's attorney failed to properly redact.  (Def.'s Br., Dkt. 118 at 12); *see also Sioson v. Knights of Columbus*, 303 F.3d

### C.     Final Lodestar Calculation

For the reasons outlined above, Plaintiff is awarded fees for Solda's work as follows:

| Reasonable Hourly Rate | Hours (Actual)[9] | Hours (after 30% reduction) | Reasonable Fee |
|---|---|---|---|
| $375 | 612.95 | 429.065 | $160,899.38 |

Accordingly, the total reasonable fee in this case is $160,899.38.

## II.     Costs

"Costs 'normally include[] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged [to] fee-paying clients.'" *Gem Fin. Serv.*, 2023 WL 5831129, at *8 (first alteration in the original) (quoting *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)).   Plaintiff seeks a total of $5,338.60 in costs.   (*See* Spreadsheet of Non-Compensable Costs, Dkt. 119-12; Solda Decl., Dkt. 110-1 ¶ 8.)   In response to this figure, Defendant argues that internal copying costs for undescribed documents are not compensable. (Def.'s Br., Dkt. 118 at 16–17.)   The Court agrees.   *See Zhang v. Zhang*, No. 16-CV-4013, 2020 WL 9256464, at *13 (S.D.N.Y. Dec. 21, 2020) (holding that "internal copying costs for undescribed documents" are not compensable).   Defendant also argues that Plaintiff's meal costs are not compensable.   (Def.'s Br., Dkt. 118 at 17.)   "[M]eals that are not required by out-of-town travel are not compensable." *Tatum v. City of New York*, No. 06-CV-4290, 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) (quoting *Lucky Brand Dungarees, Inc. v. Ally Apparel Resources,*

---

458, 460 (2d Cir. 2002) ("To make a legal argument is to advance one's contentions by connecting law to facts.").   Because Defendant has failed to provide any legal argument whatsoever with respect to these assertions, the Court declines to reduce the fee award on any of these bases.   *See also Sioson*, 303 F.3d at 460 (declining to "serve generally as an advocate" for a party that has failed to provide legal argument (quoting *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999))).

[9] This does not include any work performed after November 9, 2023, as described in Section I.B.3.b *supra*.

*LLC*, No. 05-CV-6757, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 20, 2009)).  Plaintiff does not indicate whether these meal costs were required by out-of-town travel or otherwise respond to this argument.  (*See generally* Pl.'s Reply Br., Dkt. 121.)   Accordingly, the Court agrees with Defendant; unexplained meal costs are not compensable.  As a result, Plaintiff's costs are reduced by $2,141.20, for a total of $3,197.40.  (*See* Def.'s Br., Dkt. 118 at 17; Spreadsheet of Non-Compensable Costs, Dkt. 119-12; Solda Decl., Dkt. 110-1 ¶ 8.)

## CONCLUSION

For the reasons stated above, Plaintiff's motion for attorney's fees and costs is granted in part.  Plaintiff is awarded $160,899.38 in fees and $3,197.40 in costs, for a total of $164,096.78.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 15, 2024
        Brooklyn, New York